**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                :
ADRIAN KING,                    :
                                :   Civil Action No. 06-6228(MLC)
             Petitioner,        :
                                :
      v.                        :       O P I N I O N
                                :
ALFARO ORTIZ, et al.,           :
                                :
             Respondents.       :
_____  :
```

**APPEARANCES:**

> ADRIAN KING, Petitioner pro se, # 492218/SBI# 627428C
> Bo Robinson Center, 377 Enterprise Avenue
> Trenton, New Jersey 08638
>
> NICOLE S. MCGRATH, ESQ.
> OFFICE OF THE SOMERSET COUNTY PROSECUTOR
> P.O. Box 3000, Somerville, New Jersey 08876
> Counsel for Respondents

**COOPER**, District Judge

Petitioner, Adrian King, who is a prisoner confined at a halfway house in New Jersey, petitions for a writ of habeas corpus under 28 U.S.C. § 2254.  The respondents are Prison Administrator Alfaro Ortiz and the Attorney General of the State of New Jersey. The Petition will be dismissed for failure to exhaust state court remedies, or alternatively because petitioner fails to raise a colorable federal claim.

## I.  BACKGROUND

King was indicted by a Somerset County Grand Jury on February 8, 2001, on charges of first degree possession of heroin with the intent to distribute (Count One), and third degree possession of

heroin (Count Two).  King was tried before the Honorable Paul W. Armstrong, J.S.C., and a jury on February 9, 10, 11, 17 and 18, 2004.  He was found guilty on all counts in the indictment.

King was sentenced on July 16, 2004, to a 15-year prison term with a five-year period of parole ineligibility.  He appealed from his sentence and conviction to the New Jersey Appellate Division.  The appeal was dismissed on December 15, 2004 for failure to prosecute.  However, the Appellate Division reinstated the appeal on January 31, 2005.

King also filed a pro se motion for reconsideration of his sentence, which was denied by the sentencing judge, Judge Armstrong, on April 21, 2005.  In an opinion dated April 14, 2006, the Appellate Division affirmed King's conviction.

On April 18, 2006, King filed a petition for certification to the New Jersey Supreme Court.  The New Jersey Supreme Court denied certification on May 23, 2006.

King then filed this habeas petition on or about November 22, 2006.[1]  He amended his petition on April 4, 2007.  The State

---

[1]  Under the "prison mailbox rule," a habeas petition is deemed filed on the date the prisoner delivers it to prison officials for mailing, not the date the petition is ultimately filed with the court.  Houston v. Lack, 487 U.S. 266, 270-71 (1988); see Burns v. Morton, 134 F.3d 109, 112-13 (3d Cir. 1998) (applying rule set forth in Houston, which dealt with filing of appeal, to pro se prisoner's filing of habeas petition).  The Court is unable to determine from the petition's face the exact date that King handed his petition to prison officials for mailing, but King signed it on November 22, 2006.  See Henderson v. Frank, 155 F.3d 159, 163-64 (3d Cir. 1998) (using date

answered the petition on June 12, 2007, providing the Court with the relevant state court record.  King filed objections to the State's response on July 12, 2007.

## II.  STATEMENT OF CLAIMS

King raises the following claims for habeas relief in the petition and amended petition:

Ground One: The prosecutor knowingly approved a listening device outside the provisional protocol governing the authorization of intercepts of a wire, electronic or oral communication.

Ground Two: The trial court erred by improperly admitting into evidence telephone conversations intercepted by law enforcement agents where the State refused to meet proof requirement showing proper authorization to initiate interception of conversations.

Ground Three: The establishment of reasonable suspicion for probable cause to obtain authorization for interception of private conversation never existed for agents to apply.

Ground Four: Petitioner was denied effective assistance of trial counsel as guaranteed under the Sixth Amendment to the United States Constitution.

_____

prisoner signed petition as date he handed it to prison officials for purposes of calculating timeliness of habeas petition). Accordingly, the Court finds that November 22, 2006, rather than December 27, 2006 (the date the petition was received in the Clerk's office), was the date this petition was filed for purposes of calculating the timeliness of the petition.

The State contends that the petition should be dismissed because petitioner has failed to exhaust his state court remedies as to the ineffective assistance of counsel claim.  The State also argues that the ineffective assistance of counsel claim is without merit, and that federal habeas relief is not available for King's Fourth Amendment claims concerning the interception of telephone conversations.[2]

### III.  DISCUSSION

### A.  Exhaustion Analysis

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective".  28 U.S.C. § 2254(b)(1).  Exhaustion of state remedies has been required for more than a century, see Ex parte Royall, 117 U.S. 241 (1886), was first codified at 28 U.S.C. § 2254 in 1948, see Rose v. Lundy, 455 U.S. 509, 515-18 (1982), and was the subject of significant revisions under the Antiterrorism and Effective Death Penalty Act ("AEDPA") in 1996.  See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001) (finding "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a]

---

[2]  There is no defense advanced as to any time bar in bringing this federal habeas petition.  Thus, this Court presumes that this petition was timely filed but not exhausted.

petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts").[3]

The exhaustion requirement is intended to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism. Granberry v. Greer, 481 U.S. 129 (1987); Rose, 455 U.S. at 516-18. Exhaustion also has the practical effect of permitting development of a complete factual record in state court, to aid the federal courts in their review. Rose, 455 U.S. at 519.

A petitioner exhausts state remedies by presenting federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings. See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Lambert v. Blackwell, 134 F.3d at 513 (collateral attack in state court is not required if petitioner's claim has been considered on direct appeal); 28 U.S.C. § 2254(c)

_____

[3] A petition for a writ of habeas corpus may not be granted if a petitioner has not exhausted remedies in state court, but a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust state court remedies. See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n. 42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")  Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied. Picard v. Connor, 404 U.S. 270, 275 (1971); Castille v. Peoples, 489 U.S. 346, 350 (1989).

The petitioner generally bears the burden to prove all facts establishing exhaustion.  Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).  This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition.  Picard, 404 U.S. at 275.  Reliance on the same constitutional provision is not sufficient; the legal theory and factual predicate also must be the same.  Id. at 277.

Where any available procedure remains for the applicant to raise the question presented in the state courts, the applicant has not exhausted the available remedies.  28 U.S.C. § 2254(c).

Moreover, the exhaustion doctrine is a "total" exhaustion rule.  That is, "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims [('mixed' petitions)]."  Lundy, 455 U.S. at 522.  At the time Rose v. Lundy was decided, there was no statute of limitations on the filing of federal habeas petitions.  The enactment in 1996 of a one-year

limitations period for § 2254 habeas petitions,[4] however, "'has altered the context in which the choice of mechanisms for handling mixed petitions is to be made.'"  Crews v. Horn, 360 F.3d 146, 151 (3d Cir. 2004) (quoting Zarvela v. Artuz, 254 F.3d 374, 379 (2d Cir.), cert. denied, 534 U.S. 1015 (2001)).  Because of the one-year limitations period, dismissal of a timely-filed mixed petition may forever bar a petitioner from returning to federal court.  "Staying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition."  Crews, 360 F.3d at 151.  Indeed, when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay may be only appropriate course of action.  Id. at 154.

The Supreme Court has somewhat limited the stay-and-abeyance rule announced in Crews.

> [S]tay and abeyance should be available only in limited
> circumstances.  ...  [S]tay and abeyance is only
> appropriate when the district court determines there
> was good cause for the petitioner's failure to exhaust
> his claims first in state court.  Moreover, even if a
> petitioner had good cause for that failure, the
> district court would abuse its discretion if it were to
> grant him a stay when his unexhausted claims are
> plainly meritless.
>
> ...
>
>      On the other hand, it likely would be an abuse of
> discretion for a district court to deny a stay and to
> dismiss a mixed petition if the petitioner had good
> cause for his failure to exhaust, his unexhausted

---

[4] See 28 U.S.C. § 2244(d).

claims are potentially meritorious, and there is no
indication that the petitioner engaged in intentionally
dilatory litigation tactics.  In such circumstances,
the district court should stay, rather than dismiss,
the mixed petition.  ...  For the same reason, if a
petitioner presents a district court with a mixed
petition and the court determines that stay and
abeyance is inappropriate, the court should allow the
petitioner to delete the unexhausted claims and to
proceed with the exhausted claims if dismissal of the
entire petition would unreasonably impair the
petitioner's right to obtain federal relief.

Rhines v. Weber, 544 U.S. 269, 277-78 (2005) (citations omitted).

     Even where stay and abeyance is appropriate, the district

court's discretion in structuring the stay is limited by the

timeliness concerns reflected in the one-year statute of

limitations.  "Thus, district courts should place reasonable time

limits on a petitioner's trip to state court and back."  Id. at

278.  See Crews, 360 F.3d at 154 ("If a habeas petition is

stayed, the petitioner should be given a reasonable interval,

normally 30 days, to file his application for state post-

conviction relief, and another reasonable interval after the

denial of that relief to return to federal court.  If a

petitioner fails to meet either time-limit, the stay should be

vacated nunc pro tunc.") (citations omitted).

     Respondents here have shown that King has failed to exhaust

his state court remedies as to his ineffective assistance of

counsel claim before proceeding with this federal habeas

petition.[5]   A review of the state court record reveals that King
raised an ineffective assistance of counsel claim on direct
appeal.  However, the New Jersey Appellate Division stated:

> King's arguments with respect to the alleged inadequacy of his
> attorney concern matters that may well have involved
> tactical and strategic considerations.  Therefore, in
> accordance with our general policy, we will not entertain
> those arguments at this time, leaving them instead for a
> post-conviction hearing, should defendant pursue that
> course.  State v. Preciose, 129 N.J. 451, 460-62 (1992);
> State v. Sparano, 249 N.J. Super. 411, 419 (App. Div.
> 1991)("[D]efendant must develop a record at a hearing at
> which counsel can explain the reasons for her conduct and
> inaction and at which time the judge can rule upon the
> claims including the issue of prejudice.").

> . . .  Furthermore, the [break-in-the-chain of evidence]
> issue in this case was never whether the material seized was
> heroin, but whether King possessed the heroin.  The thrust
> of King's argument appears to be that his counsel mishandled
> this issue in the trial court.  If so, he may raise that
> matter as part of his application for post-conviction
> relief.  However, given the evidence in this case, it is
> difficult to imagine how King will be able to persuade a
> judge that any deficiency in his representation caused him
> prejudice.

(4-12-2006 App. Div. Op., at 4-5.)

The record thus confirms that the ineffective assistance of
counsel claim was not exhausted in the state courts.  Moreover,
King has not established that he had "good cause" for his failure
to exhaust this unexhausted claim.

Few courts have provided guidance as to what constitutes
"good cause" for failing to exhaust a claim in state court within

---

[5]   King alleges that his counsel, while diligent and
respectful of communication, did not have adequate legal
expertise in criminal law and procedure.  (Pet., at Ground III;
Amended Pet., at Ground IV).

the meaning of Rhines.  In Pace v. DiGuglielmo, 544 U.S. 408
(2005), the Supreme Court stated: "A petitioner's reasonable
confusion about whether a state filing would be timely will
ordinarily constitute 'good cause' for him to file in federal
court."  Id. at 416.  The United States Court of Appeals for the
Third Circuit has emphasized the need to be mindful of Justice
Stevens's concurrence in Rhines, which cautions that "'good
cause' for failing to exhaust state remedies more promptly ... is
not intended to impose the sort of strict and inflexible
requirement that would 'trap the unwary pro se prisoner,'" but
has not otherwise defined the standard to be applied.  Ellison v.
Rogers, 484 F.3d 658, 662 (2007) (quoting Rhines, 544 U.S. at 279
(Stevens, J., concurring)).

    Some lower federal courts have adopted the standard for
"cause" applicable to procedural defaults, which requires that
some "objective factor external to the defense" made it impossible
to bring the claim earlier in state court proceedings, as required
by Coleman v. Thompson, 501 U.S. 722, 754 (1991) (quoting Murray
v. Carrier, 477 U.S. 478, 488 (1986)).  See, e.g., Tullis v.
Kontah, No. 06-1025, 2007 WL 915197 (S.D. Ohio Mar. 26, 2007)
(collecting cases).  In Jackson v. Roe, the Court of Appeals for
the Ninth Circuit rejected the contention that Rhines requires a
showing of "extraordinary circumstances," but did not otherwise
provide guidance.  At the opposite extreme, one court simply

10

requires "a prima facie case that a justifiable, legitimate reason exists which warrants the delay of federal proceedings while exhaustion occurs."  See Brisco v. Scribner, No. 04-2175, 2005 WL 3500499 (E.D. Cal. Dec. 21, 2005) (Report and Recommendation), adopted, 2006 WL 568224 (E.D. Cal. Mar. 3, 2006).

Under even the most generous of standards here, King has failed to establish "good cause" for his failure to exhaust his state remedies.  At the conclusion of his direct appeal, King proceeded directly to federal court.  He did not even attempt to file a petition for post-conviction relief in state court with respect to his ineffective assistance of counsel claim, even though the Appellate Division on direct appeal explicitly stated that that was the appropriate avenue to pursue his claim.  King was well within the one-year statute of limitations when he filed this petition.  See 28 U.S.C. § 2244(d)(1)(A).  His judgment of conviction did not become final until August 23, 2006, and therefore, he had until August 23, 2007 before his one-year limitations period expired.  He filed this federal habeas petition on November 22, 2006.  The State responded to the petition, raising the exhaustion issue, on June 12, 2007, when there was still time remaining on the one year period.  Moreover, King does not appear to be procedurally barred from bringing his unexhausted claim for state collateral review.  See New Jersey Court Rules 3:22-1 through 4.

Thus, King could have raised his ineffective assistance of counsel claim in state court by way of a state PCR petition. King did not do so, and he does not suggest that he filed in this Court out of confusion or is pursuing his unexhausted claim in state court contemporaneously with this action to avoid delay. In fact, King fails to proffer any reason for his failure to exhaust these claims in state court.  He does not even request that this Court stay his petition.  Under these circumstances, it would be an abuse of discretion to grant a stay.  See Rhines, 544 U.S. at 276-78.

Accordingly, the Court is constrained to dismiss the entire petition for failure to exhaust as required under 28 U.S.C. § 2254.  See Rose, 455 U.S. at 510.

## B.   Petitioner's Claims Are Without Merit

Respondents alternatively argue that this Court should deny the Petition on the merits pursuant to 28 U.S.C. § 2254(b)(2), which provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  Section 2254(b)(2) codifies the holding in Granberry v. Greer, 481 U.S. 129 (1987), "by conferring upon the district court the authority to deny a habeas petition on the merits despite the petitioner's failure to exhaust state remedies."  Lambert, 134 F.3d at 514.

12

In <u>Granberry</u>, the Court held that where a state failed to raise the exhaustion defense in the district court, the court of appeals may examine the exhaustion issue under the following circumstances:

> The court should determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim . . . . [I]f it is perfectly clear that the applicant does not raise even a colorable federal claim, the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal courts will all be well served even if the State fails to raise the exhaustion defense, the district court denies the habeas petition [on the merits], and the court of appeals affirms the judgment of the district court forthwith.

481 U.S. at 134-35.

District courts may thus deny a mixed petition on the merits under § 2254(b)(2) only "if it is perfectly clear that the applicant does not raise even a colorable federal claim." <u>Lambert</u>, 134 F.3d at 515 (quoting <u>Granberry</u>, 481 U.S. at 135). Under this standard, "if a question exists as to whether the petitioner has stated a colorable federal claim, the district court may not consider the merits of the claim if the petitioner has failed to exhaust state remedies and none of the exceptions set forth in sections 2254(b)(1)(B)(I) and (ii) applies." <u>Lambert</u>, 134 F.3d at 515.

13

## 1.  Ineffective Assistance of Counsel Claim

The only unexhausted claim presented here is petitioner's claim that his trial counsel was constitutionally ineffective due to inadequate legal expertise in criminal law and procedure. Although not set forth in his petition, King did list many examples of alleged deficiencies of counsel in his brief on direct appeal.[6]

The State argues that this unexhausted claim should have first been raised in a state PCR motion, and petitioner's failure to do so makes the habeas petition premature.  Alternatively, the State contends that the specific claims of ineffectiveness must be rejected because King has failed to demonstrate that trial counsel's performance was deficient and, if it was, that it resulted in prejudice to petitioner.

The right to counsel is the right to effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).  A petitioner seeking to prove a Sixth Amendment violation must demonstrate that counsel's

---

[6]  For instance, petitioner complains that his counsel elicited inadmissible hearsay evidence during Detective Federico's testimony; lacked any basic knowledge concerning the admissibility of the audio tapes of a consensual interception; filed motions long out of time and without sufficient briefing; failed to give a complete list with addresses of witnesses for trial; came to court late one day and was generally out of depth with respect to criminal law and proceedings to the point where her actions and missteps frustrated the trial judge.

performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct. Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005), cert. denied, Jacobs v. Beard, 126 S.Ct. 479 (2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir. 2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (cites omitted); see Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996).

If able to demonstrate deficient performance by counsel, the petitioner must also show that counsel's substandard performance

15

actually prejudiced his defense.  Strickland, 466 U.S. at 687.

Prejudice is shown if "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability

is a probability sufficient to undermine confidence in the

outcome."  Id. at 694.  The reviewing court must evaluate the

effect of any errors in light of the totality of the evidence.

Id. at 695-96.  Thus, the petitioner must establish both

deficient performance and resulting prejudice in order to state

an ineffective assistance of counsel claim.  Id. at 697; see

Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

In State v. Preciose, 129 N.J. 451, 609 A.2d 1280 (1992),

the New Jersey Supreme Court stated that "[i]neffective-

assistance-of-counsel claims are particularly suited for post-

conviction review because they often cannot reasonably be raised

in a prior proceeding."  609 A.2d at 1285.  The court emphasized

its "general policy against entertaining ineffective-assistance-

of-counsel claims on direct appeal because such claims involve

allegations and evidence that lie outside the trial record."  Id.

But there is no explicit statement in Preciose or the New

Jersey Court Rules that requires a defendant to pursue his

ineffective assistance of counsel claims in the post-conviction

setting.  Nevertheless, where evidence outside the record is

required to prove ineffective assistance of counsel claims, such

16

claims are to be filed in a post-conviction proceeding.  See
State v. Castagna, 187 N.J. 293, 901 A.2d 363, 376 (2006).

This Court has reviewed the state court record and
transcripts of the trial proceedings, and finds that King's claim
of ineffective assistance of trial counsel fails to rise to the
level of constitutional magnitude.  While the transcripts show
that petitioner's trial counsel was not a seasoned trial
attorney, the record also confirms that petitioner's counsel
vigorously defended King throughout the proceedings.  King simply
has failed to make a prima facie showing of ineffectiveness of
counsel to warrant an evidentiary hearing outside of the record.

Trial counsel here made several motions on petitioner's
behalf, even though the motions were out of time.[7]  Further,
while trial counsel admitted unfamiliarity with New Jersey court
rules and procedure, it was apparent that counsel prepared well
in learning state court procedure in order to argue against an
untimeliness bar to have the motions heard by the court.  In
fact, the trial judge allowed counsel to argue the motions on the
merits.  Thus, almost every defense that King wanted to advance
was presented by trial counsel, but the trial court found the

---

[7]  King's trial counsel was the last of many King had
retained throughout the proceedings.  Counsel, upon taking the
case, had been instructed that pretrial motion practice was
concluded.  Nevertheless, counsel attempted to make those motions
on the eve and day of trial to preserve petitioner's rights.  Any
delay in filing such motions were not the fault of counsel, but
rather can be attributed to petitioner, who had delayed the trial
for a substantial period of time.

motions to be meritless, and not by fault of counsel's inexperience.  Consequently, this Court can find no evidence in the transcripts to suggest that trial counsel was unconstitutionally ineffective in performing at trial.

For instance, in his direct appeal, King complained that counsel allowed certain hearsay evidence to be admitted at trial, namely, that Detective Federico was allowed to repeat information provided by the confidential informant ("CI") about King being a drug supplier.  But admissible evidence following the hearsay statements (principally the audiotapes of the phone conversations between the CI and King) confirmed that King was a supplier. Consequently, any deficiency in trial counsel's performance in failing to prevent this "hearsay" evidence was harmless.

King argued that counsel was deficient in failing to keep the audiotapes from being admitted into evidence at trial and played for the jury.  The record shows that counsel strenuously attempted to keep the audiotapes out.  But counsel could not show any defect or problems with the audiotapes, and the claim that there was no proper authorization for the consensual interception was advanced by counsel and rejected by the trial judge as without merit.[8]  There was no statutory basis requiring written

---

[8]  Prior counsel had retained an expert to review the audiotapes for authenticity and other purposes.  The expert could find nothing wrong with the tapes, so there was no basis to keep the tapes from being admitted as evidence.

authorization as suggested by petitioner because this was a
consensual interception; the CI was initiating the call and
verbal authorization was obtained from the Prosecutor's Office.

King next complained that his counsel filed pertinent
motions out of time.  As explained above, these motions were
untimely, but the court did allow counsel to argue the merits of
the motions.  Furthermore, the delay in bringing the motions was
the fault of petitioner, who himself had stalled the start of the
trial for a substantial period of time by repeatedly substituting
new counsel.  In fact, one motion presented by trial counsel
concerned a violation of petitioner's speedy trial rights, which
the court rejected on this very ground, that petitioner himself
delayed trial.

In sum, this Court could find no support in the trial record
for petitioner's claim that his trial counsel was ineffective.
More importantly, even if counsel was deficient in any of these
respects, King cannot show prejudice, the second prong under
Strickland.  Indeed, the evidence of petitioner's guilt was
overwhelming.  Petitioner was caught on audiotape making a drug
deal with the CI.  The audiotapes confirm that King was a dealer
or supplier of heroin.  Petitioner was actually apprehended at
the scene of the drug transaction in the motel room, which had
been set via the telephone conversations between the CI and
petitioner.  The drugs recovered were confirmed to be heroin in

19

an amount clearly meant for distribution.  In short, King was caught in the act, and no amount of evidentiary motions, which clearly had no merit, would have changed the result of the trial.

The state appellate court likewise found the evidence against King to be so overwhelming as to preclude a finding of prejudice concerning the conduct of counsel during trial. Specifically, as to the admission of the audiotapes concerning the CI and King setting up the transaction, the court said:

> Absent a timely motion to suppress, we will not interfere with the judge's discretionary admission of the evidence on this record.  Moreover, even if the evidence had been admitted improperly, we perceive no prejudice to King since the other evidence of his guilt is quite overwhelming.

(4-12-06 App. Div. Op., at 5).  Further, as to the claim that trial counsel mishandled the chain of custody issue concerning the heroin itself, the appellate court rejected the claim because the real issue at trial was not whether the material seized was heroin, but whether King had possession, and because "given the evidence in this case, it is difficult to imagine how King will be able to persuade a judge that any deficiency in his representation cause him prejudice."  (Id.)

Therefore, as King has not established a prima facie case that his counsel was deficient or any deficiency in representation caused him prejudice, and as the trial record shows overwhelming evidence of his guilt, this Court finds that King has failed to support a claim of ineffective assistance of

counsel under the standards set forth in <u>Strickland</u>.
Petitioner's claim of ineffective assistance of counsel does not
raise a colorable federal claim that would prevent this Court
from denying the petition on the merits pursuant to 28 U.S.C. §
2254(b)(2).  See <u>Lambert</u>, 134 F.3d at 515.

### 2.  Lack of Authorization for Consensual Interception Claim

King also contends that the trial court erred by admitting
evidence of the telephone conversations between the CI and King
that the State had obtained through consensual interception, and
that there was no proper authorization for the consensual
interception.  These related claims have been fully litigated at
the state court level, and the state court rejected petitioner's
arguments.  On direct appeal, the Appellate Division held:

> During trial, however, [King] did object to [the] admission
> [of the audiotapes] because the State did not have an
> authorization signed by the County Prosecutor.  The judge
> overruled the objection because the State's evidence
> indicated that the authorization had been oral in this case
> and had come from the County Prosecutor through an Assistant
> Prosecutor.  The statute does not require written
> authorization, and authorization may be provided either the
> County Prosecutor or his designee.  N.J.S.A. 2A:156A-4.
> Absent a timely motion to suppress, we will not interfere
> with the judge's discretionary admission of the evidence on
> the record.

(4-12-06 App. Div. Op., at 4-5.)

As a general rule, matters of state law and rules of
procedure and evidence are not reviewable in a federal habeas
petition.  The Supreme Court has stated that "it is not the
province of a federal habeas court to reexamine state-court

21

determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). <u>See also</u> <u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 112-15 (3d Cir. 1997); <u>Keller</u>, 251 F.3d at 416 n.2. Federal courts must afford the states deference in determinations on evidence and procedure. <u>See</u> <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986). A "a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." <u>Smith v. Horn</u>, 120 F.3d 400, 414 (3d Cir. 1997) (citations omitted), <u>cert. denied</u>, 522 U.S. 1109 (1998).

Evidentiary rulings may violate due process if a petitioner "was denied fundamental fairness at trial." <u>Hutchins v. Hundley</u>, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991) (cites omitted); <u>see</u> <u>Kontakis v. Beyer</u>, 19 F.3d 110, 120 (3d Cir. 1994), <u>cert.</u> <u>denied</u>, 513 U.S. 881 (1994). The appropriate inquiry is "whether the claimed error of law is a fundamental defect that inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." <u>Hutchins</u>, 1991 WL 167036, at *4 (citing <u>United States v. De Luca</u>, 889 F.2d 503, 506 (3d Cir. 1989), <u>cert. denied</u>, 496 U.S. 939 (1990)). An "otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable

22

doubt." <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 681 (1986).  An error is not harmless if "it aborts the basic trial process or denies it altogether." <u>Hutchins</u>, 1991 WL 167036, at *5 (citing <u>Rose v. Clark</u>, 478 U.S. 570, 578 n.6 (1986)).

The issue here of whether proper authorization was obtained for the consensual interception is based entirely on state law. The state court expressly found no statutory violation in the authorization for the consensual interception.  Thus, substantively, petitioner's claim is without merit because the state court correctly admitted the audiotapes based on the State's proffer that the police had proper authorization under state law.

It was harmless error even if the trial judge admitted the audiotapes in error, as there was overwhelming evidence of petitioner's guilt.  There also is nothing evident from the trial record to demonstrate that the trial process was fundamentally unfair or the resulting conviction was a denial of due process based on the admission of the audiotapes.  Accordingly, King's claims concerning the authorization of the consensual interception and admission of the audiotapes do not raise a colorable federal claim that would prevent this Court from denying the petition on the merits pursuant to 28 U.S.C. § 2254(b)(2).  <u>See</u> <u>Lambert</u>, 134 F.3d at 515.

23

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 1537 U.S. 322 (2003).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Jurists of reason here would not find the Court's procedural disposition of this case debatable.  Accordingly, no certificate of appealability will issue.

24

### V.   CONCLUSION

This Court finds that King has failed to exhaust his available state court remedies or to allege facts sufficient to excuse failure to exhaust or have this Court issue a "stay and abeyance".  Alternatively, the Court finds that King has failed to raise a colorable federal claim that would prevent this Court from denying the petition on the merits pursuant to 28 U.S.C. § 2254(b)(2).  Therefore, this petition will be dismissed for failure to exhaust available state court remedies and for failure to state a colorable federal claim.

No certificate of appealability will issue, insofar as King has failed to make a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).


                                    s/ Mary L. Cooper
                              **MARY L. COOPER**
                              United States District Judge

**Dated:** February 7, 2008